IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| ROBERT STEVEN DUDLEY, § | | |
| TDCJ-CID No. 1763466, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | 2:23-CV-146-Z-BR |
| | § | |
| SENIOR WARDEN ADAM GONZALES, | § | |
| CAPTAIN DIANA GONZALES, | § | |
| OFFICER STEPHANIE PORRAS, SGT. | § | |
| LUIS VELARDE, OFFICER MANUEL | § | |
| RAMIREZ JR. and ASSISTANT | § | |
| WARDEN WILLIAM JONES III, | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
TO GRANT IN PART AND DENY IN PART DEFENDANTS' MOTION TO DISMISS**

Before the Court is Defendants' Motion to Dismiss Plaintiff's claims pursuant to FED. R. CIV. P. 12(b)(1) and (6) (the "Motion"). (ECF 30). For the reasons stated below, the Magistrate Judge recommends that the Motion be GRANTED in part and DENIED in part.

## I. FACTUAL BACKGROUND[1]

Plaintiff Robert Steven Dudley ("Dudley") is a prisoner at the Clements Unit of the Texas Department of Criminal Justice ("TDCJ") in Amarillo, Texas. On February 15, 2023, Defendant Manuel Ramirez Jr. ("Ramirez"), in preparation for moving Dudley from his cell, strip searched him and handcuffed him with his hands behind his back. Defendant Diana Gonzales ("D. Gonzales") was standing behind Ramirez when he entered Dudley's cell. Defendants William

---

[1] These background facts are taken from Plaintiff's Second Amended Complaint and questionnaire responses and are assumed to be true for the purpose of evaluating the merits of Defendants' Motion.

1

Jones III ("Jones"), Luis Velarde ("Velarde") and Stephanie Porras ("Porras"), along with non-defendant Sgt. Lopez ("Lopez") and approximately six other officers, were on a nearby walkway. After handcuffing Dudley, Ramirez asked the control picket officer, Jane Doe No. 1, to unlock Dudley's cell door. Ramirez then asked Porras and Velarde to escort Dudley to the showers. Porras was holding Dudley's left arm and Velarde was holding his right arm as they walked down the hallway. (ECF 29 at 4).

As they were walking by Cell 12, inmate Clarence Badgett ("Badgett"), armed with a razor, came out of Cell 13 towards them. Porras and Velarde let go of Dudley and ran behind him. Badgett then attacked Dudley--still in handcuffs--with the razor. Dudley was cut, punched and kicked by Badgett. The attack lasted "approximately a minute" and stopped only after non-defendant Lopez tackled Badgett when Badgett was on top of Dudley trying to cut his throat. Jones, D. Gonzales, Ramirez, Velarde and Porras, along with Jane Doe No. 2 (who Dudley now identifies with the last name Bermea) and several unidentified officers "stood and did nothing" and let Badgett's attack on Dudley continue, despite wearing protective vests and being equipped with chemical agents and possibly riot batons. As a result of the attack, Dudley had to undergo tendon reattachment surgery on his right ring finger and suffered other cuts and bruises. (ECF 29 at 5-6).

Dudley contends that Jane Doe No. 1 knew Badgett's door was unsecured when she opened Dudley's door, which is contrary to prison policy. He further recounts several incidents of offenders leaving unsecured cells to assault other inmates. (ECF 29 at 6-7). He also alleges that a red light showed an unsecure cell door at the time Ramirez ordered Dudley's cell door to be opened, but Defendants nonetheless proceeded to take Dudley out of his cell. (ECF 9 at 4).

In response to the Court's briefing order, Dudley submitted responses to the Court's questionnaire, as well as a Second Amended Complaint (the "Complaint"). Dudley alleges that

Jones, Ramirez, D. Gonzales, Velarde and Porras (the "Officer Defendants") failed to protect him from Badgett's attack, and that Defendant Adam Gonzales ("A. Gonzales"), as the supervisor of the Officer Defendants, is liable for their actions. (ECF 9 at 1-2). Defendants filed the Motion on June 21, 2024, asking the Court to dismiss Dudley's claims pursuant to FED. R. CIV. P. 12(b)(1) and (6). (ECF 30). Dudley responded to the Motion, disputing Defendants' allegations. (ECF 36).

## II. LEGAL STANDARDS

### A. Rule 12(b)(1).

A court may dismiss a complaint for lack of subject-matter jurisdiction. FED. R. CIV. P. 12(b)(1). A case is properly dismissed for lack of subject matter jurisdiction when the court lacks "the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998). The Court should grant a 12(b)(1) motion to dismiss only if it appears certain that the plaintiff cannot prove any set of facts that would entitle him to recovery. *Morris v. Thompson*, 852 F.3d 416, 419 (5th Cir. 2017). The party invoking the Court's jurisdiction bears the burden of demonstrating that jurisdiction exists. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

### B. Rule 12(b)(6).

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation and citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, … on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and footnote omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" do not

establish facial plausibility. *Iqbal,* 556 U.S. at 678. A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 557).

In evaluating the sufficiency of a complaint, courts accept well-pleaded factual allegations as true, but do not credit conclusory allegations or assertions that merely restate the legal elements of a claim. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016). The Court also is mindful it "must construe the pleadings of *pro se* litigants liberally … to prevent the loss of rights due to inartful expression." *Perez v. Dall. Cnty. Jail*, No. 3:20-cv-01761, 2022 WL 1215781, at *2 (N.D. Tex. Mar. 31, 2022) (internal citations omitted); *see also Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006). "But 'liberal construction does not require that the Court ... create causes of action where there are none.'" *Rolan v. LaSalle Sw. Corr.*, No. 3:20-cv-2842, 2021 WL 5568168, at *3 (N.D. Tex. Nov. 1, 2021) (quoting *Smith v. CVS Caremark Corp.*, No. 3:12-cv-2465, 2013 WL 2291886, at *8 (N.D. Tex. May 23, 2013)). While courts hold *pro se* plaintiffs to a more lenient standard than attorneys when analyzing complaints, such plaintiffs must nevertheless plead factual allegations that raise the right to relief above a speculative level. *Id.* (citing *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002)).

### III. LEGAL ANALYSIS

**A.    Rule 12(b)(1): Sovereign Immunity.**

Defendants first ask the Court to dismiss the claim for monetary damages against all Defendants in their official capacities.[2] As a sovereign entity, a state may not be sued without its consent. Therefore, under the Eleventh Amendment, "[f]ederal courts are without jurisdiction over

---

[2] While Dudley claims in his questionnaire to be suing Defendants in their individual capacities only (ECF 9 at 6), his Second Amended Complaint claims to sue them in both their individual and official capacities (ECF 29 at 4).

suits against a state, a state agency, or a state official in his official capacity unless that state has waived its sovereign immunity or Congress has clearly abrogated it." *Moore v. Louisiana Bd. of Elementary & Secondary Educ.*, 743 F.3d 959, 963 (5th Cir. 2014).[3]

Dudley's claims against Defendants in their official capacities are without merit in that they are simply another way of suing the TDCJ, and, therefore, the State of Texas. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985); *see also Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("Suits against state officials in their official capacity therefore should be treated as suits against the State."). It is well established that suits for monetary damages against state officials in their official capacities cannot succeed under Section 1983. *See Almond v. Tarver*, 468 F. Supp. 2d 886, 892-95 (E.D. Tex. 2006) (collecting authorities and holding that claim against state official in his official capacity was barred by sovereign and Eleventh Amendment immunities). In addition, state officials acting in their official capacities are not "persons" under § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989). Therefore, the claims against Defendants in their official capacities should be dismissed without prejudice.

**B.      Rule 12(b)(6): Failure to State a Claim.**

    **1.      Dudley's Eighth Amendment Claim.**

Dudley alleges that the Officer Defendants failed to protect him from Badgett's attack in violation of the Eighth Amendment. Prison officials have a constitutional duty to protect prisoners from violence at the hands of their fellow inmates. *See Farmer v. Brennan*, 511 U.S. 825, 832–33, (1994); *see also Horton v. Cockrell*, 70 F.3d 397, 400–02 (5th Cir.1995). Pursuant to *Farmer*, an inmate "must show that he is incarcerated under conditions posing a substantial risk of serious harm" and that prison officials were deliberately indifferent to the inmate's safety. *Id*. at 834. The

---

[3] Sovereign immunity does not apply to state officials sued in their individual capacity.

Eighth Amendment standard enunciated in *Farmer* applies to a prisoner's claim that prison officials failed to protect him from harm inflicted by other inmates.

Not every injury suffered by a prisoner at the hands of another, however, rises to the level of a constitutional violation. *Id.* at 834. Nor are prison officials "expected to prevent all inmate-on-inmate violence." *Adames v. Perez*, 331 F.3d 508, 513 (5th Cir. 2003) (citing *Farmer*, 511 U.S. at 834). Only deliberate indifference, "an unnecessary and wanton infliction of pain or acts repugnant to the conscience of mankind," constitutes conduct proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97 (1976). "Deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. Dudley alleges that the Officer Defendants failed to protect him and failed to intervene in Badgett's attack; thus, they were deliberately indifferent to Dudley's safety.

The Eighth Amendment requires prison officials to restore control in volatile situations, but officials who fail to prevent an injury inflicted by fellow prisoners are liable only when they possess the requisite mental state. *Id.* at 832-34. A prison guard has a duty to intervene and attempt to end an assault on an inmate. *Id*. Although immediate intervention is not required, a prison official must take steps to halt inmate-on-inmate violence. Case law consistently holds that deliberate indifference does not exist in situations in which officers have taken some action to halt the violence, including: (1) giving verbal orders to stop the violence, *Payne v. Collins*, 986 F. Supp. 1036, 1061 n.59 (E.D. Tex. June 25, 1997), (2) leaving to get help, *see Rios v. Scott*, 100 F. App'x 270 (5th Cir. 2004) (officer did not immediately intervene in an attack but ran to get help), and (3) leaving to obtain equipment, such as weapons and chemical agents, to halt the violence, *see Longoria v. Texas*, 473 F.3d 586, 592 (5th Cir. 2006) (officers did not immediately intervene but

ran to alert other officers and to obtain weapons and tear gas).

In failure-to-protect cases, "prison guards have no constitutional duty to intervene in the armed assault of one inmate upon another when intervention would place the guards in danger of physical harm." *Id.* at 593-94; *Prosser v. Ross*, 70 F.3d 1005, 1008 (8th Cir. 1995); *see also Winfield v. Bass*, 106 F.3d 525, 532 (4th Cir. 1997) (en banc) ("[S]uch heroic measures are not constitutionally required."). The Constitution does not require unarmed officials to endanger their own safety in order to protect a prisoner threatened with physical violence. *Longoria*, 473 F.3d at 593–94.

The Eighth Amendment, however, does demand that the prison official take some action to halt the violence. *See Davidson v. Cannon*, 474 U.S. 344, 348 (1986) (comparing negligence to deliberate indifference in a failure to intervene context and implying that standing by and allowing an attack to proceed constitutes deliberate indifference). "Despite its concern with the Fourteenth Amendment's due process clause, *Davidson* constitutes part of Eighth Amendment jurisprudence." *Payne*, 986 F. Supp. at 1061 n.5.

Dudley's Amended Complaint and questionnaire responses state that Officer Defendants took no action to stop the attack. Eventually, Lopez tackled Badgett to end the attack. "[C]ompletely failing to take any action" to stop an ongoing assault on a prisoner can amount to deliberate indifference. *Winfield*, 106 F.3d at 532; *see also, e.g., Odom v. S.C. Dep't of Corr.*, 349 F.3d 765, 773 (4th Cir. 2003) ("[A] correctional officer who stands by as a passive observer and takes no action whatsoever to intervene during an assault violates the [Eighth Amendment] rights of the victim inmate."); *Williams v. Mueller*, 13 F.3d 1214, 1216 (8th Cir. 1994) ("A prison official acts with deliberate indifference to an inmate's safety when the official is present at the time of an assault and fails to intervene or otherwise act to end the assault."); *cf Prosser*, 70 F.3d at 1008–09

(finding no deliberate indifference when prison guard ran to get help immediately after inmate threw first punch at plaintiff). Thus, courts have found that "a corrections officer's failure to intervene in a beating can be the basis of [§ 1983] liability" if the officer had a reasonable opportunity to act and "simply refused to do so." *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002).

Dudley alleges that the Officer Defendants were deliberately indifferent when they intentionally failed to intervene and protect him from Badgett's attack. At this stage of the proceedings, Dudley has stated a claim upon which relief may be granted.

### 2. Qualified Immunity.

The Officer Defendants also seek to dismiss Dudley's claims based upon their affirmative defense of qualified immunity. "When a defendant asserts a qualified-immunity defense in a motion to dismiss, the court has an obligation to carefully scrutinize the complaint before subjecting public officials to the burdens of broadreaching discovery." *Longoria v. San Benito Indep. Consol. Sch. Dist.*, 942 F.3d 258, 263–64 (5th Cir. 2019). "Qualified immunity is a two-step process. The first [step] asks whether the defendant violated the plaintiff's constitutional rights. The second step adds the protection for the defendant that liability attaches only if the right was clearly established" at the time the violation occurred. *Sims v. City of Madisonville*, 894 F.3d 632, 638 (5th Cir. 2018).

Based on Dudley's pleadings, the Officer Defendants' alleged failure to protect and intervene, to call for help, or to leave to obtain weapons and/or assistance constitutes a sufficient allegation of deliberate indifference to a known and obvious excessive risk to Dudley's safety. *See Farmer*, 511 U.S. at 847. At the time of this incident, the law was clear that an officer standing by and doing nothing while one inmate attacks another violates the Constitution. Some action is

required. Dudley's allegations, if taken as true, demonstrate that Officer Defendants violated a clearly established constitutional right of which a reasonable correctional official would have known: Dudley's constitutional right to be protected from inmate violence.

Deliberate indifference is difficult to prove; however, Dudley's allegations, viewed in the light most favorable to Dudley, state a claim of deliberate indifference for failure to protect. Because the pleadings sufficiently allege an unreasonable violation of a clearly established constitutional right, the Officer Defendants' qualified immunity defense fails at this stage of the proceedings. Also for these reasons, the Officer Defendants' request to dismiss Dudley's punitive damages claim also fails. The Motion should be denied as to Dudley's claims (including his punitive damages claim) against the Officer Defendants.

### 3. Supervisory Liability.

Dudley alleges that A. Gonzales is liable as a supervisor for the actions of the Officer Defendants.[4] Under Section 1983, however, supervisors are not liable for the actions of others, including their subordinates. *See Ashcroft*, 556 U.S. at 677 (2009). Instead, only the direct acts or omissions of the supervisor will support a claim for individual liability under Section 1983. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 692 (1978); *Jones v. Lowndes County, Miss.*, 678 F.3d 344, 349 (5th Cir. 2012); *see also Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992) (a plaintiff bringing a Section 1983 action must "specify the personal involvement of each defendant"). A supervisor may be held liable under Section 1983 only when (1) the supervisor was personally involved in the constitutional deprivation, (2) there is a causal connection between the supervisor's wrongful conduct and a constitutional deprivation, or (3) the supervisor implemented

---

[4]Defendant Jones moves on this issue as well, but Dudley states in his Response Brief that he is suing Jones based solely on Jones' failure to protect him from Badgett's attack. (ECF 36 at 6).

a policy so deficient that the policy itself violates constitutional rights and is the moving force behind a constitutional deprivation. *See Thompkins v. Belt*, 828 F.2d 298, 303-04 (5th Cir. 1987); *see also Peña v. City of Rio Grande City*, 879 F.3d 613, 620 (5th Cir. 2018); *Gates v. Tex. Dep't of Prot. & Reg. Servs.*, 537 F.3d 404, 435 (5th Cir. 2008).

To the extent that Dudley seeks damages from A. Gonzales in his capacity as a supervisor, Dudley fails to state a claim. Neither Dudley's Complaint nor his questionnaire responses allege facts establishing that A. Gonzales was personally involved in the allegedly wrongful actions. Dudley does not allege that A. Gonzales was personally involved in any decision that constituted a failure to protect Dudley, nor does Dudley allege that A. Gonzales implemented a specific unconstitutional policy that resulted in his injury. Dudley has failed to state a claim upon which relief can be granted against A. Gonzales. As a result, the Motion should be granted as to Dudley's claims against A. Gonzales.

**C.     Leave to Amend.**

Ordinarily, a *pro se* plaintiff should be granted leave to amend his complaint prior to dismissal. *Brewster v. Dretke*, 587 F.3d 764, 767-68 (5th Cir. 2009). Leave to amend is not necessary, however, when the plaintiff already has pleaded his best case. *Wiggins v. La. State Univ.-Health Care Servs. Div.*, 710 F. App'x 625, 627 (5th Cir. 2017) (per curiam) (citations omitted). Dudley has filed three versions of his Complaint and has provided questionnaire responses to further clarify his causes of action. For the reasons stated above, Dudley has not stated a claim against A. Gonzales, despite being given ample opportunities to amend and to explain his claims. Therefore, the Magistrate Judge recommends that Dudley not be given further leave to amend as to A. Gonzales, or as to his claims for monetary damages against Defendants in their official capacity, which is futile as a matter of law.

## RECOMMENDATION

For the reasons stated above, the Magistrate Judge recommends that Defendants' Motion to Dismiss pursuant to FED. R. CIV. P. 12(b)(1) and (6) be GRANTED in part and denied in part. Specifically, the Motion should be granted pursuant to Rule 12(b)(1) as to Dudley's claim for monetary damages against Defendants in their official capacities, and it should be granted pursuant to Rule 12(b)(6) as to Dudley's claims against Defendant Adam Gonzales. Defendants' Motion should be denied as to Dudley's remaining claims.

## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Findings, Conclusions and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED October 15, 2024.

*[signature: Lee Ann Reno]*
LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE

### \* NOTICE OF RIGHT TO OBJECT \*

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Findings, Conclusions and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections shall bar an aggrieved party, except upon grounds

of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge and accepted by the district court. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276–77 (5th Cir. 1988).