IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| ROBERT STEVEN DUDLEY, § | | |
| TDCJ-CID No. 1763466, § | | |
| § | | |
| Plaintiff, § | | |
| v. § | | |
| § | | |
| SENIOR WARDEN ADAM GONZALES, § | 2:23-CV-146-Z-BR | |
| CAPTAIN DIANA GONZALES, § | | |
| OFFICER STEPHANIE PORRAS, SGT. § | | |
| LUIS VELARDE, LEO RAMIREZ and § | | |
| ASSISTANT WARDEN WILLIAM § | | |
| JONES III, § | | |
| § | | |
| Defendants. § | | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
TO GRANT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Before the Court is Defendants' Motion for Summary Judgment (the "Motion") filed by Defendants Leo Ramirez, Diana Gonzales, Stephanie Porras, Luis Velarde and William Jones III. (ECF 49). For the reasons stated below, the Magistrate Judge recommends that the Motion be GRANTED.

**I. FACTUAL BACKGROUND**

Plaintiff Robert Steven Dudley ("Dudley") is a prisoner at the Clements Unit of the Texas Department of Criminal Justice ("TDCJ") in Amarillo, Texas. Dudley brings this civil rights complaint pursuant to 42 U.S.C. § 1983, alleging that Defendants failed to protect him from an attack by an inmate armed with a razor blade. Defendants' Motion asks the Court to enter summary judgment in their favor based upon their affirmative defense of qualified immunity. Dudley responded to the Motion, alleging that Defendants are not entitled to summary judgment.

1

A.      **Plaintiff's Version of Events.**

On February 15, 2023, Defendant Leo Ramirez ("Ramirez")[1], in preparation for moving Dudley from Cell 8, strip searched him and handcuffed him with his hands behind his back.[2] (ECF 9 at 4). Defendant Diana Gonzales ("Gonzales") was standing behind Ramirez when he entered Dudley's cell. Defendants William Jones III ("Jones"), Luis Velarde ("Velarde") and Stephanie Porras ("Porras"), along with non-defendant Sgt. Lopez ("Lopez") and approximately six other officers, were on a nearby walkway. (ECF 29 at 4). After handcuffing Dudley, Ramirez asked the control picket officer, Jane Doe No. 1, to unlock Dudley's cell door. (*Id.*). Dudley alleges that a red light showed an unsecure cell door in the area at the time Ramirez ordered Dudley's cell door to be opened, but Defendants nonetheless proceeded to take Dudley out of his cell. (ECF 63 at 3). Ramirez then asked Porras and Velarde to escort Dudley to the showers. (ECF 29 at 8-9). Porras was holding Dudley's left arm and Velarde was holding his right arm as they walked down the hallway toward the showers. (*Id.* at 5).

As they were walking by Cell 12, inmate Clarence Badgett ("Badgett"), armed with a razor, came out of Cell 13 towards them. Porras and Velarde let go of Dudley and ran behind him. (*Id.*; ECF 9 at 8). Badgett then attacked Dudley--still in handcuffs--with the razor. (ECF 29 at 8-9). Dudley was cut, punched and kicked by Badgett. The attack lasted "approximately a minute" and stopped only after Lopez tackled Badgett when Badgett was on top of Dudley trying to cut his

---

[1]Dudley first identified this Defendant as Manuel Ramirez Jr.; however, Leo Ramirez entered an appearance and apparently is the officer to whom Dudley refers. Dudley's Amended Complaint refers to Leo Ramirez. (ECF 29).

[2]Page citations to summary judgment evidence refer to the electronic page number assigned by the Court's electronic filing system.

throat.³ (*Id*. at 5). Jones, Gonzales, Ramirez, Velarde and Porras, along with Jane Doe No. 2 and several unidentified officers, "stood and did nothing" and let Badgett's attack on Dudley continue, despite wearing protective vests and being equipped with chemical agents and possibly riot batons. (*Id*.). Dudley further alleges that Gonzales "panicked and backed away … leaving Plaintiff to be assaulted" and that Jones also "left Plaintiff to be assaulted." (ECF 9 at 3, 7). As a result of the attack, Dudley had to undergo tendon reattachment surgery on his right ring finger and suffered other cuts and bruises. (ECF 29 at 5-6). Dudley also recounts several incidents of offenders leaving unsecured cells to assault other inmates. (*Id*. at 6-7).

**B.      Defendants' Version of Events.**

On February 15, 2023, officers were conducting cell searches when Dudley was approached by Velarde and Porras, who asked him to comply with a strip search. (ECF 53-1 at 3). When Dudley refused, Gonzales and Lopez arrived at Dudley's cell to attempt a verbal intervention. (*Id.*). Ramirez placed Dudley in handcuffs and led him out of his cell, with Ramirez securing Dudley's right arm and Porras securing his left arm. (ECF 53-2 at 3; ECF 53-3 at 2). Ramirez and Porras began to escort Dudley towards the shower. (*Id.*).

As they walked down the hallway, Badgett manipulated the door to his cell and entered the hallway. (ECF 53-1 at 3; ECF 53-2 at 3; ECF 53-3 at 2). Badgett immediately began assaulting Dudley with a razor blade. (ECF 53-1 at 3; ECF 53-3 at 2). To get away from Badgett and avoid the assault, Dudley pulled away from Ramirez and Porras. (*Id*.). Dudley fell to the ground and Badgett struck Dudley with a closed fist and inflicted cuts to Dudley's head, neck and shoulders with the razor blade. (ECF 53-1 at 3; 53-5 at 2).

---

³Dudley also provides declarations from two inmates who corroborate the attack by Badgett. (ECF 63 at 6, 8). They do not recount the actions of the Defendants, other than witness Cozy B. Washington stating that "all the security personnel[] had backed away except for Sgt. Jesus Lopez…"). (*Id.* at 8).

Velarde, who was conducting a strip search in a nearby cell, observed the assault and came to help. (ECF 53-4 at 3). Porras and Velarde immediately and simultaneously discharged their chemical weapons in the direction of both inmates to stop the assault. (ECF 53-1 at 3; ECF 53-2 at 3; ECF 53-3 at 2; ECF 53-5 at 2). Badgett then ceased his attack, and officers separated Dudley and Badgett. *Id.* Once the inmates were contained, Ramirez inspected Badgett's cell. (ECF 53-6 at 2). On the inside upper left-hand corner of the cell door, Ramirez located a magnet that Badgett had used to open his cell door to attack Dudley. *Id.*

## II. SUMMARY JUDGMENT STANDARD

### A. Summary Judgment is Proper if No Genuine Dispute as to Any Material Fact.

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must resolve all reasonable doubts in favor of the party opposing the motion. *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981).

The movant has the burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Anderson,* 477 U.S. at 247. If the movant bears the burden of proof on a claim or defense on which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure all of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). The nonmovant then must provide affirmative evidence to defeat summary judgment. *Anderson*, 477 U.S. at 257.

No "mere denial of material facts nor...unsworn allegations [nor] arguments and assertions in briefs or legal memoranda" will suffice to carry this burden. *Moayedi v. Compaq Comput. Corp.*, 98 F. App'x 335, 338 (5th Cir. 2004). The Court requires "significant probative evidence" from the nonmovant in order to dismiss a request for summary judgment supported appropriately by the movant. *United States v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001). The Court must consider all evidence but must not make any credibility determinations or weigh the evidence. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

Because he proceeds *pro se*, Dudley's pleadings are held to a less stringent standard than those drafted by attorneys. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed") (quotation omitted). Nevertheless, *pro se* parties must "still comply with the rules of procedure and make arguments capable of withstanding summary judgment." *Ogbodiegwu v. Wackenhut Corr. Corp.*, 202 F.3d 265, 1999 WL 1131884, at *2 (5th Cir. Nov. 10, 1999); *Yazdchi v. Am. Honda Fin. Corp.*, 217 F. App'x 299, 304 (5th Cir. 2007) ("The right of self-representation does not exempt a party from compliance with relevant rules of procedural and substantive law.") (citing *Hulsey v. Texas*, 929 F.2d 168, 171 (5th Cir. 1991)).

B. **Defendants' Qualified Immunity Defense Alters the Burden of Proof.**

Defendants move for summary judgment on their affirmative defense of qualified immunity. "The doctrine of qualified immunity protects government officials from civil damages liability when their actions could reasonably have been believed to be legal." *Argueta v. Jaradi*, 86 F.4th 1084, 1088 (5th Cir. 2023) (citing *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011) (en banc)). Once an officer pleads qualified immunity, the plaintiff has the burden to establish that the officer violated the plaintiff's clearly established federal rights. *Argueta*, 86 F.4th at 1088

(citing *Estate of Davis v. City of North Richland Hills*, 406 F.3d 375, 380 (5th Cir. 2005)). "This is a demanding standard." *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015), *cert. denied*, 136 S. Ct. 1517 (2016). Because qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law, … we do not deny its protection unless existing precedent places the constitutional question beyond debate." *Argueta*, 86 F.4th at 1088 (internal citation and quotation omitted).

A qualified immunity defense alters the usual summary judgment burden of proof. *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). "Once an official pleads the defense, the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law." *Id*. To trigger the qualified-immunity framework, however, the government official must "satisfy his burden of establishing that the challenged conduct was within the scope of his discretionary authority." *Sweetin v. City of Texas City*, 48 F.4th 387, 392 (5th Cir. 2022) (quoting *Cherry Knoll, L.L. C. v. Jones*, 922 F.3d 309, 318 (5th Cir. 2019)). For example, in *Sweetin,* the Fifth Circuit held this "oft-overlooked threshold requirement" was dispositive "because state law does not give a permit officer the authority to conduct stops of any kind." *Sweetin,* 48 F.4th at 392. In this case, however, Dudley does not dispute that Defendants were acting within the scope of their duties.

To determine if an official acting within the scope of his or her duties is entitled to qualified immunity, courts conduct a two-step analysis. First, they examine whether the plaintiff has shown a violation of a constitutional right under current law. *Bevill v. Fletcher*, 26 F.4th 270, 275 (5th Cir. 2022) (quoting *Benfield v. Magee*, 945 F.3d 333, 337 (5th Cir. 2019)). Second, if a violation has occurred, courts determine whether the right in question was "clearly established" at the time of the alleged violation, such that the officer was on notice of the unlawfulness of his or her

conduct. *Id.* In short, an officer is entitled to qualified immunity "if there is no violation, or if the conduct did not violate law clearly established at the time." *Bailey v. Iles*, No. 22-30509, 2023 WL 8062239 at *2 (5th Cir. Nov. 21, 2023). Courts have the discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

The qualified immunity defense is appropriately resolved at the summary judgment stage when (1) a plaintiff has established that the defendant has engaged in the complained-of conduct or (2) the court "skip[s], for the moment, over ... still-contested matters to consider an issue that would moot their effect if proved." *Haverda v. Hays County*, 723 F.3d 586, 599 (5th Cir. 2013). "'If resolution of [qualified immunity] in the summary judgment proceedings turns on what the defendant actually did, rather than on whether the defendant is immunized from liability ..., and if there are conflicting versions of his conduct, one of which would establish and the other defeat liability, then the case is inappropriate for summary judgment.'" *Id.* (quoting *Barker v. Norman*, 651 F.2d 1107, 1123-24 (5th Cir. Unit A July 1981)).

Accordingly, the qualified immunity inquiry at this stage requires that the Court "accept the plaintiff's version of the facts (to the extent reflected by proper summary judgment evidence) as true." *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655 (5th Cir. 2004); *see Tolan v. Cotton*, 572 U.S. 650, 651 (2018) ("[I]n ruling on a motion for summary judgment, '[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" (quoting *Anderson,* 477 U.S. at 255). And, particularly applicable in *pro se* cases, "verified complaint[s] and other verified pleadings serve as competent summary judgment evidence." *Falon v. Holly*, 480 F. App'x 325, 326 (5th Cir. 2012) (per curiam) (citing *Hart v. Hairston*, 343 F.3d 762, 765 (5th Cir. 2003)).

7

"Although summary judgment may be appropriate based on a plaintiff's inability to prove the facts essential to recovery, this has 'nothing to do with the qualified immunity defense,'" *Haverda*, 723 F.3d at 599 (quoting *Barker*, 651 F.2d at 1124), as "immunity ... [is] an entitlement distinct from the merits of the case," *Good v. Curtis*, 601 F.3d 393, 397 (5th Cir. 2010) (citation and quotation marks omitted). Each Defendant's conduct must be analyzed separately to determine if he or she is entitled to qualified immunity.

On February 10, 2025, Dudley filed a motion seeking discovery on qualified immunity, which the Court granted in part on March 10, 2025. (ECF 59, 61). The Court granted Dudley leave to file a supplemental response brief and additional evidence by May 5, 2025, after he had received and reviewed the discovery. (ECF 69). Dudley filed no supplemental response.

### III. LEGAL ANALYSIS

Dudley alleges that Defendants failed to protect him from Badgett's attack in violation of the Eighth Amendment. Prison officials have a constitutional duty to protect prisoners from violence at the hands of their fellow inmates. *See Farmer v. Brennan*, 511 U.S. 825, 832–33, (1994); *see also Horton v. Cockrell*, 70 F.3d 397, 400–02 (5th Cir.1995). Pursuant to *Farmer*, an inmate "must show that he is incarcerated under conditions posing a substantial risk of serious harm" and that prison officials were deliberately indifferent to the inmate's safety. *Id*. at 834.

Not every injury suffered by a prisoner at the hands of another, however, rises to the level of a constitutional violation. *Id.* at 834. Nor are prison officials "expected to prevent all inmate-on-inmate violence." *Adames v. Perez*, 331 F.3d 508, 513 (5th Cir. 2003) (citing *Farmer*, 511 U.S. at 834). Only deliberate indifference, "an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind," constitutes conduct proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97 (1976). "Deliberate indifference" means that a prison

official is liable "only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847-48. Officials who fail to prevent an injury inflicted by fellow prisoners are liable only when they possess the requisite mental state. *Id.* at 832-34.

While, at first blush, there appears to be issues of fact as to where each Defendant was in relation to the attack and what actions they took after the attack began, such issues are immaterial for the purposes of Defendants' Motion. In sum, and as set forth below, Dudley has failed to provide evidence that any of the Defendants was deliberately indifferent to Dudley's well-being. Accordingly, Defendants are entitled to qualified immunity.

**A.    Generalized Allegations.**

In response to the Motion, Dudley provides generalized allegations that "Defendants" knew or should have known of a high risk of inmate violence. Specifically, he alleges that Defendants knew that the area in which he was attacked is a "high risk assaultive behavior area" and "safety precautions are required." (ECF 29 at 7). He claims that the building houses violent offenders, mentally ill offenders and "the worst of the worst." (ECF 62 at 2). Dudley further states that there are signs posted on windows and doors that warn that the building is a "high risk" area. (*Id.*). He claims that it is "a known fact" that offenders "have been constantly coming out of unsecured cell doors whether to run around or to assault someone." (ECF 29 at 6-7). He also provides three examples of other assaults involving different inmates (apparently not involving Badgett). (*Id.* at 7). He further alleges that Badgett is a "well known assaultive offender in prisoner" who has a "life without parole designation placed on his door." (ECF 62 at 2-3). Because of these facts, Dudley alleges, Defendants "had knowledge of the risk." (*Id.* at 3).

Dudley's allegation that Defendants should have known that Dudley would be in danger

9

simply because the cell block contained dangerous inmates and that Badgett was designated as "life without parole" falls far short of establishing that each Defendant was both (1) aware of facts from which the inference could be drawn that there was a substantial risk of serious harm to Dudley if he were taken to the showers at that time under escort and (2) that each Defendant actually drew the inference. *Edmiston v. Borrego*, 75 F.4th 551, 559 (5th Cir. 2023) ("[A]n official will not be held liable if he merely should have known of a risk." (internal quotation marks omitted) (quoting *Converse v. City of Kemah*, 961 F.3d 771, 775 (5th Cir. 2020))); *Smith v. Jaramillo*, No. SA-05-CA-0713, 2006 WL 1984345, at *4 (W.D. Tex. July 13, 2006) (dismissing prisoner's failure to protect claim based on "generic complaints and speculations that defendants ... personally knew or should have known that he would be assaulted" by a gang member).

These generalized allegations are insufficient as a matter of law to establish deliberate indifference by any Defendant. While Dudley alleges that an officer aided Badgett in placing the magnet in his door (as does witness Washington), Dudley does not allege that any of the named Defendants is the officer to whom he refers. Dudley also provides no evidence that he notified any of the Defendants that he and Badgett had problems, that he had been threatened by Badgett, or that he and Badgett previously had violent interactions.

The generalized danger of prison life described by Dudley is insufficient to show that Defendants were subjectively aware of the risk of serious harm to Dudley, or that they disregarded such risk in deciding to escort him to the shower area. *Rodriguez v. Lozano*, 108 F. App'x 823, 828 (5th Cir. 2004). However, Dudley's verified pleadings and summary judgment evidence do provide some individualized allegations, which the Court addresses below.

**B.      Officer Stephanie Porras.**

Dudley alleges that Porras was on his left side, holding his arm, as he was escorted down

the hall toward the showers. (ECF 9 at 8, ECF 63 at 2-3). He claims that, when Badgett attacked, Porras released his arm and ran behind him, thereby failing to protect him from the attack. (*Id*.). Defendants disagree, alleging that Dudley pulled away from Porras in an effort to avoid the attack and that she did not abandon him. (ECF 50 at 17, ECF 53-2 at 3). The Court will assume for the purposes of this Motion that Dudley's version is correct and that Porras released him and moved behind him an unspecified distance. However, this fact alone is not dispositive. Porras was not required by law to put herself in danger by stepping in front of a charging inmate wielding a weapon. *Longoria v. Texas*, 473 F.3d 586, 593-94 (5th Cir. 2006). Even if Porras moved behind Dudley, the undisputed evidence also shows that Porras administered chemical agents to both Dudley and Badgett (as did Defendant Velarde) to help end the attack, even as Lopez tackled Badgett. (ECF 53-2 at 3; ECF 63 at 3-4). In fact, Dudley's evidence shows that officers deployed chemical spray to end the attack, and that Lopez was sprayed along with Badgett and Dudley. (*Id*.).

In failure-to-protect cases, "prison guards have no constitutional duty to intervene in the armed assault of one inmate upon another when intervention would place the guards in danger of physical harm." *Longoria,* 473 F.3d at 593-94; *Prosser v. Ross*, 70 F.3d 1005, 1008 (8th Cir. 1995); *see also Winfield v. Bass*, 106 F.3d 525, 532 (4th Cir. 1997) (en banc) ("[S]uch heroic measures are not constitutionally required."). The Constitution does not require unarmed officials to endanger their own safety in order to protect a prisoner threatened with physical violence. *Longoria*, 473 F.3d at 593-94. "[C]ompletely failing to take any action" to stop an ongoing assault on a prisoner can amount to deliberate indifference. *Winfield*, 106 F.3d at 532. Courts have found that "a corrections officer's failure to intervene in a beating can be the basis of [§ 1983] liability" if the officer had a reasonable opportunity to act and "simply refused to do so." *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002). However, Dudley has provided no evidence that Porras either

11

had a "reasonable opportunity" to entirely prevent Badgett's attack, or that she "completely failed" or "simply refused" to take action after allegedly running behind Dudley.

Even if Dudley is correct and Porras did nothing, he still cannot defeat her affirmative defense. Because Porras's Motion is based upon qualified immunity, the burden shifts to Dudley to provide some evidence of deliberate indifference by Porras; that is, evidence that Porras knew that Dudley faced a substantial risk of serious harm when he was escorted from his cell, and that Porras disregarded that risk by failing to take reasonable measures to abate it. *Farmer*, 511 U.S. at 847. This Dudley fails to do. He provides no evidence that Porras (1) saw the red light that indicated another door was not secure; (2) knew that Badgett could open his door to escape his cell; (3) knew that Badgett was armed with a weapon; or (4) knew that Badgett (or any other inmate) planned to attack Dudley if she escorted Dudley down the hall at that time. Nor does Dudley provide evidence that Porris deliberately disregarded any such danger as she escorted him down the hall. Dudley has failed to provide evidence indicating deliberate indifference by Porras; as a result, he has failed to allege a constitutional violation against her and she is entitled to qualified immunity. *See Randolph v. Prator*, No. 03-0433, 2005 WL 1630167, at *2 (W.D. La. June 16, 2005) (recommending dismissal of plaintiff's failure to protect claim because defendant responded immediately and appropriately once the altercation began and had no knowledge of difficulties between plaintiff and his cellmate before the incident).

**C.     Sergeant Luis Velarde and Officer Leo Ramirez.**

Similar to his allegations against Porras, Dudley alleges that Velarde was on his right side, holding his arm, as Dudley was escorted down the hall toward the showers. (ECF 9 at 9). He claims that, when Badgett attacked, Velarde released his arm and ran behind Dudley, thereby failing to protect him from the attack. (*Id*.). Defendants disagree, alleging that Ramirez was the officer

escorting Dudley on the right, rather than Velarde. Instead, Defendants claim that Velarde was conducting a strip search of another inmate in a different cell. (ECF 50 at 18; ECF 53-3 at 2; ECF 53-4 at 4).

Regardless of whether the escorting officer was Velarde or Ramirez, the mere fact that the officer moved behind Dudley (as Dudley alleges), without more, does not evidence deliberate indifference. As with Porras, Dudley has not shown that the officer (1) saw the red light that indicated another door was not secure; (2) knew that Badgett could open his door to escape his cell; (3) knew that Badgett was armed with a weapon; or (4) knew that Badgett planned to attack Dudley if he escorted Dudley down the hall at that time. Nor has he provided evidence that the officer "drew the inference" that Dudley would be at substantial risk of harm if the officer escorted Dudley to the shower area. As a result, Dudley has provided no evidence that the officer subjectively intended to cause him harm, and, thus, has not provided evidence of deliberate indifference.

As the undisputed evidence shows, Porras and Velarde deployed their chemical weapons to end the attack, which Dudley claims lasted "approximately one minute" before the chemicals were administered and Lopez tackled Badgett. (ECF 9 at 5). Even if the officer failed to act, such failure is undisputedly justified due to the actions of Porras, Velarde and Lopez to end the attack within a minute. *See Williams v. Mueller*, 13 F.3d 1214, 1215-16 (8th Cir. 1994).

To the extent that Defendants are correct and Velarde was conducting a strip search elsewhere, he is entitled to qualified immunity because Dudley cannot state a constitutional violation against him. As Velarde was conducting a strip search of another inmate, he observed Badgett and Dudley only after the assault was already in progress. (ECF 53-4 at 3). He, along with Porras, immediately administered chemical spray to end the assault. (*Id.*). Dudley provided no

13

evidence that Velarde (1) saw the red light that indicated another door was not secure; (2) knew that Badgett could open his door to escape his cell; (3) knew that Badgett was armed with a weapon; or (4) knew that Badgett planned to attack Dudley while other officers were escorting Dudley down the hall. Dudley's allegations do not establish that Velarde was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [that he also drew] the inference." *Farmer*, 511 U.S. at 847.

Dudley states in his Amended Complaint that Ramirez ordered his door opened although the red light was on, which indicated that the area was not secure. (ECF 63 at 3). However, he provides no evidence that Ramirez saw the light or otherwise was informed that the light was on.[4] Assuming for the purposes of the Motion that Ramirez did know the light was on, however, this fact alone does not show that Ramirez was deliberately indifferent. The Supreme Court explained long ago that "[t]he qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 341–43 (1986)). "[A]n allegation of malice is not sufficient to defeat immunity if the defendant acted in an objectively reasonable manner." *Malley*, 475 U.S. at 341. Dudley provided no evidence that Ramirez knew that Badgett's door was open, knew that Badgett (or any other inmate) intended to attack Dudley as he was being escorted to the showers, or intended for Dudley to be injured by Badgett as Dudley was escorted down the hall. Accordingly, Dudley has failed to meet his burden to create an issue of material fact as to whether Ramirez and Velarde are entitled to qualified immunity.

---

[4] Instead, he alleges only that Defendant Jane Doe No. 1 told Defendant John Doe that the light was on; there no evidence that either Doe defendant told Ramirez. (ECF 29 at 6).

### D.     Captain Diana Gonzales.

Dudley alleges that Gonzales was "standing at [the] top of stair and the run railing" at the time he was awakened by Ramirez for the cell search. (ECF 63 at 2). He alleges that Gonzales threatened to gas him with "the big can of chemical agents she had in her hand" when he began to refuse to complete the strip search. (*Id.*). Presumably this threat occurred when, as Defendants contend, Gonzales and Lopez arrived at Dudley's cell for the verbal intervention due to Dudley's refusal to be searched.

Construing the evidence in Dudley's favor, it appears that Gonzales was either near Dudley's cell or near a stairway railing at the "back of [the] run". (ECF 63 at 3). He claims that the rail was 10-15 feet away "on the same run." (ECF 62 at 3). There is no evidence, however, that Gonzales was in the hallway anywhere between Badgett and Dudley such that she could have either prevented Badgett's attack, or was close enough to help subdue Badgett. Based on Dudley's contentions, it appears that Gonzales was either back in Dudley's cell behind Porras and Velarde, or "near the back of the run." The undisputed evidence also indicates that Badgett exited Cell 13 as Dudley was passing Cell 12, so the attack apparently occurred with little warning and almost immediately upon Badgett exiting his cell. (ECF 9 at 8). Since Dudley alleges that the attack lasted about one minute, there is no evidence that Gonzales was able to intervene but chose not to do so.

In addition, Dudley has provided no evidence of deliberate indifference on the part of Gonzales. As with the other Defendants, there is no evidence that Gonzales (1) saw the red light that indicated another door was not secure at the time Ramirez asked for Dudley's door to be opened; (2) knew that Badgett could open his door to escape his cell; (3) knew that Badgett was armed with a weapon; or (4) knew that Badgett planned to attack Dudley while other officers were escorting him down the hall. In short, Dudley has provided no evidence of deliberate indifference

by Gonzales; accordingly, she is entitled to qualified immunity.

### E. Assistant Warden William Jones.

Dudley alleges that Jones was with Gonzales "standing at [the] top of [the] stairs and the run railing" and "were at the railing by the back of the run" at the time of the attack. (ECF 63 at 2-3). As with Gonzales, however, there is no evidence that Jones was in a location where he could have either prevented Badgett's attack, or was close enough to help subdue Badgett. In addition, Dudley has provided no evidence of deliberate indifference on the part of Jones. As with the other Defendants, there is no evidence that Jones (1) saw the red light that indicated another door was not secure at the time Ramirez asked for Dudley's door to be opened; (2) knew that Badgett could open his door to escape his cell; (3) knew that Badgett was armed with a weapon; or (4) knew that Badgett planned to attack Dudley while other officers were escorting him down the hall. In fact, there is no evidence that Jones was in the vicinity such that he could either see the red light or assist in subduing Badgett. In short, Dudley has provided no evidence of deliberate indifference by Jones; accordingly, he is entitled to qualified immunity.

### F. Clearly Established Law.

To defeat the second prong of the qualified immunity analysis, Dudley must provide clearly established law that Defendants' conduct was not objectively reasonable. "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (internal quotation omitted). There are two ways for a plaintiff to demonstrate that a defendant's conduct violated clearly established law. *Batyukova v. Doege,* 994 F.3d 717, 726 (5th Cir. 2021). Under the first, more typical approach, the plaintiff must "identify a case" or "body of relevant case law" in which "an officer acting under similar circumstances ... was held to have violated the [Constitution]." *Id*.

While there need not be a case directly on point, the unlawfulness of the challenged conduct must be beyond debate. *Id.* Under the second approach, there can be the rare "obvious case," where the unlawfulness of the officer's conduct is so egregious that it is sufficiently clear although existing precedent does not address similar factual circumstances. *Id.* at 726 (citing *Dist. of Columbia v. Wesby*, 538 U.S. 48, 65 (2018)); *see also Brosseau v. Haugen*, 543 U.S. 194, 199 (2004).

"In determining what constitutes clearly established law, [the Fifth Circuit] looks to Supreme Court precedent and then to [its] own." *Hicks v. LeBlanc*, 81 F.4th 497, 503 (5th Cir. 2023), (quoting *Shumpert v. City of Tupelo*, 905 F.3d 310, 320 (5th Cir. 2018)). When there is no direct controlling authority, "[the Fifth Circuit] may rely on decisions from other circuits to the extent that they constitute a robust consensus of cases of persuasive authority." *Id.* "It is the plaintiff's burden to find a case in his favor that does not define the law at a high level of generality." *Rich v. Palko*, 920 F.3d 288, 294 (5th Cir. 2019).

Dudley contends that *Williams v. Hampton*, 797 F.3d 276 (5th Cir. 2015), and *Morgan v. District of Columbia*, 824 F.2d 1049 (D.D.C. 1987)), support his claim that Defendants' actions were contrary to clearly established law. In *Williams*, the Fifth Circuit noted Supreme Court precedent holding that evidence showing that a substantial risk of inmate attacks was "longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant … had been exposed to information concerning the risk and thus 'must have known' about it," could be sufficient to prove that the defendant had actual knowledge of the risk. *Williams*, 797 F.3d at 288 (quoting *Farmer*, 511 U.S. at 842-43). *Williams* does not support Dudley's contention on two significant grounds, however. First, Dudley has provided no evidence that a substantial risk of inmate attacks was "longstanding, pervasive, well-documented or expressly noted" by prison officials. Second, the *Williams* court also noted

that "[t]he amount of time that [the officer] had within which to appreciate the risk of harm and to draw an inference regarding the nature of that risk is also a factor in our analysis." *Id*. at 288. In holding that the record before it was legally insufficient to satisfy the subjective element of deliberate indifference, *Williams* noted that the defendant officer "had a short span of time to reflect upon the risk presented" and her acts "did not amount to punishment of [plaintiffs] as that concept has been defined by the Supreme Court." *Id*.; *see also, e.g., Tucker v. Evans*, 276 F.3d 999, 1001 (8th Cir. 2002) (qualified immunity appropriate when failure-to-protect claim arises from surprise attack by another inmate). Similarly, here, the undisputed evidence shows that Defendants had a very short span of time to reflect on the risk presented when Badgett burst out of his cell.

*Morgan* is also unavailing. Even assuming it were a Fifth Circuit or Supreme Court case that is properly considered to be "clearly established" law in this circuit, *Morgan* merely affirms denial of a motion for judgment notwithstanding the verdict filed by a defendant municipality, due to the extensive evidence put forth by the plaintiff showing that prison officials were well aware of a violent offender's previous attacks and that the municipality violated prison policy due to overcrowding and not housing the attacker in a medical wing. *Morgan*, 824 F.2d at 1067-68. The level of evidence provided by Dudley does not rise to the level of the evidence provided in *Morgan*.

Dudley has failed to meet his burden to provide relevant case law sufficient to defeat summary judgment. This is an additional basis upon which Defendants' Motion should be granted.

## RECOMMENDATION

For the reasons stated above, the Magistrate Judge recommends that Defendants' Motion for Summary Judgment be GRANTED.

## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Findings, Conclusions and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED July 1, 2025.

LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE

## \* NOTICE OF RIGHT TO OBJECT \*

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Findings, Conclusions and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge and accepted by the district court. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276–77 (5th Cir. 1988).